UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
COLLEEN KING,
                Plaintiff,

v.

WILLIAM KEYSER, Superintendent;
EDWARD BURNETT, Deputy Superintendent;
JIMI DEWITT, Family Reunion Coordinator;
BRISA POWELL, Correction Officer; JEFF
McKOY, Deputy Commissioner; and ALICIA
SMITH-ROBERTS, Ministerial, Family, and
Volunteer Services Director,
                Defendants.
--------------------------------------------------------------x

**OPINION AND ORDER**

18 CV 11301 (VB)

Briccetti, J.:

Plaintiff Colleen King, proceeding pro se and in forma pauperis ("IFP"), brings claims for violation of her constitutional rights against defendants Superintendent ("Supt.") William Keyser, Deputy Supt. Edward Burnett, Family Reunion Program ("FRP") Coordinator Jimi Dewitt, Correction Officer ("C.O.") Brisa Powell, Deputy Commissioner ("Comm'r") Jeff McKoy, and Ministerial, Family, and Volunteer Services Director Alicia Smith-Roberts.[1] Plaintiff's claims arise from the denial of her and her husband's applications to participate in the FRP at Sullivan Correctional Facility ("Sullivan").

Now pending is defendants' motion to dismiss pursuant to Rule 12(b)(6). (Doc. #16).

---

[1] Plaintiff's husband, Eric Tolliver, was listed as a plaintiff in the caption of the complaint, but did not sign the complaint and did not file a request to proceed IFP. Moreover, Tolliver is barred under 28 U.S.C. § 1915(g) from filing actions IFP in this Court while a prisoner unless he is under imminent danger of serious physical injury. See Tolliver v. Keyser, No. 18 Civ. 4391 (S.D.N.Y. Aug. 3, 2018), ECF No. 6 ("Bar Order Under 28 U.S.C. § 1915(g)"). Thus, the Court construed the complaint as asserting claims by King, including on behalf of Tolliver. (Doc. #5 at 1 n.1). The Court then dismissed without prejudice the claims asserted on Tolliver's behalf because a nonlawyer is not permitted to bring suit on behalf of another. (Id. at 2); see also United States ex rel. Mergent Servs. v. Flaherty, 540 F.3d 89, 92 (2d Cir. 2008).

1

For the following reasons, the motion is GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in plaintiff's favor, as set forth below.

I.  FRP Applications

Plaintiff is married to Eric Tolliver, an inmate at Sullivan at the time of the alleged events. Plaintiff alleges she and Tolliver were denied the right to participate in Sullivan's FRP in retaliation for Tolliver's filing grievances and bringing successful lawsuits against New York State Department of Corrections and Community Supervision ("DOCCS") officials.[2]

Plaintiff alleges she and Tolliver have applied three times to participate in the FRP as of the date of the complaint.[3] According to plaintiff, on all three occasions defendants Supt. Keyser and Deputy Supt. Burnett, who are required to review and make recommendations on FRP applications, recommended denying the applications, falsely stating Tolliver "has a poor

---

[2]  Plaintiff has not alleged any state officials retaliated against her because of her own complaints to state officials that her and her husband's FRP applications were denied.

[3]  The Court is dubious plaintiff applied to participate in the FRP in addition to her husband, or that she was at all involved in the application process. Indeed, one letter from defendant Deputy Comm'r Jeff McKoy to plaintiff states because of a DOCCS directive, DOCCS "is limited in what may be shared with the supporters and loved ones of inmates regarding the FRP application process." (Doc. #2 ("Compl.") at 54). McKoy further states in that letter, "The desire to participate in FRP is understandable. However, the FRP application process is confidential between the inmate and the Department." (Id.). Nevertheless, because the Court is required to draw all reasonable inferences in plaintiff's favor, the Court assumes for purposes of this motion that plaintiff and Tolliver together submitted the FRP applications.

"Compl. at __" refers to the page numbers automatically assigned by the Court's Electronic Case Filing system.

disciplinary and adjustment record." (Compl. at 4–5). Plaintiff asserts Tolliver does not in fact fall into any "category of disciplinary review." (Id.).

Plaintiff further alleges defendant Jimi Dewitt, the facility's FRP Coordinator and the official who conducts the final evaluation on FRP applications before the applications are sent to DOCCS headquarters in Albany for final determination, also recommended denying the FRP applications despite knowing that Keyser and Burnett's recommendations were based on false information. According to plaintiff, when she and Tolliver confronted Dewitt regarding the applications, he said: "you and I already know why your applications are being denied, take care of your end in getting rid of the law suits, and I guarantee the result of your next application will have you smiling." (Compl. at 6–7).

According to the complaint, after the FRP applications were sent to Albany, Deputy Comm'r McKoy recommended denying the FRP applications as well, and Alicia Smith-Roberts, director of the FRP, ultimately denied the FRP applications. However, plaintiff alleges she and her husband had informed both McKoy and Alicia Smith-Roberts of the alleged falsehoods and "discriminatory acts." (Compl. at 8). In addition, plaintiff alleges she informed Smith-Roberts and the other defendants of other similarly situated prisoners who were granted permission to participate in the FRP.

II.  Misbehavior Report

Plaintiff alleges on October 12, 2017, defendant C.O. Powell issued Tolliver a misbehavior report for violating a nonexistent regulation. According to plaintiff, when C.O. Powell issued the misbehavior report, she stated, "her reason for writing said misbehavior report against plaintiff's husband was because of the him [sic] filing law suits against her co-workers, therefore, she is making it her duty to see to it that plaintiff's husband never get approved to

3

participate in the Family Reunion Program." (Compl. at 7). Plaintiff alleges the misbehavior report was cited as a reason for denying at least one of the FRP applications.

In addition, plaintiff alleges Deputy Supt. Burnett affirmed at a Tier-2 hearing a misbehavior report similarly based on the violation of a nonexistent regulation—presumably the same one C.O. Powell issued, although it is unclear from the complaint. And according to plaintiff, after the FRP applications were denied, Burnett expunged the violation from Tolliver's record.

III. <u>Correspondence with State Officials</u>

Throughout these events, both plaintiff and Tolliver sent numerous letters complaining about the denial of the FRP applications to state officials, including Governor Andrew M. Cuomo, DOCCS Acting Comm'r Anthony Annucci, FRP Coordinator Dewitt, Director Smith-Roberts, and Deputy Comm'r McKoy, which plaintiff attached to her complaint. Plaintiff also attached several responses from state officials, mostly from McKoy, but also from Dewitt, Smith-Roberts, and one from Governor Cuomo stating plaintiff's letter had been "reviewed and directed to the appropriate members of my Administration." (Compl. at 93).

IV. <u>Transfer to Another Facility</u>

On September 16, 2019, plaintiff wrote the Court a letter stating her husband had been approved to participate in the FRP at Attica Correctional Facility—where plaintiff presumably had been transferred—but was then transferred "out of retaliation" to Five Points Correctional Facility, a facility that does not participate in the FRP. (Doc. #23 at 1).[4]

---

[4] The Court denied without prejudice plaintiff's request in her September 16, 2019, letter to amend her complaint based on those allegations. (Doc. #24). However, the Court stated it might re-evaluate plaintiff's request once the instant motion to dismiss was decided. (Doc. #24). The Court considers the allegations in plaintiff's letter in deciding this motion, but finds <u>infra</u> that allowing plaintiff to amend her complaint would be futile.

**DISCUSSION**

I. <u>Legal Standard</u>

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).[5] First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. <u>Id</u>. at 678; <u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id</u>. (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 556).

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir. 2010).

---

[5] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

Moreover, the Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (collecting cases). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

II. Qualified Immunity

Defendants are entitled to qualified immunity because plaintiff's right to full-contact visitation with her spouse in prison has not been clearly established.

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "Defendants bear the burden of establishing qualified immunity." Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015).

"The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was clearly established; and (3) even if the right was clearly established, whether it was objectively reasonable for the officer to believe the conduct at issue was lawful." Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013). "[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted." Hyman v.

Abrams, 630 F. App'x 40, 42 (2d Cir. 2015) (summary order).[6]  However, "a district court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if the facts supporting the defense appear on the face of the complaint."  Id.

The Court construes the right asserted in this case to be plaintiff's right to intimate association.  See Adler v. Pataki, 185 F.3d 35, 44 (2d Cir. 1999) ("[A] spouse's claim that adverse action was taken solely against that spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of a First Amendment right of intimate association."); Miller v. Annucci, 2019 WL 4688539, at *13 (S.D.N.Y. Sept. 26, 2019) (analyzing as a freedom of intimate association claim a mother's allegation that she was unable to contact her son who was detained in the Green Haven Correctional Facility infirmary).

"[T]he general right to intimate association has been clearly established since 1984 when [Roberts v. United States Jaycees, 468 U.S. 609, 617–18 (1984)] was decided."  Patel v. Searles, 305 F.3d 130, 139 (2d Cir. 2002).  "But qualified immunity does not turn on general propositions.  Rather, the essential question is whether, [at the time of the alleged events], the [r]ight was established 'in a particularized sense so that the contours of the right [would have been] clear to a reasonable official.'"  Ranta v. City of New York, 2015 WL 5821658, at *6 (E.D.N.Y. Sept. 30, 2015) (quoting Reichle v. Howards, 566 U.S. 658, 665 (2012)).

Plaintiff's right to full-contact visitation with her spouse in prison has not been clearly established.  In Malave v. Weir, a district court held, "there is no clearly established constitutional right of a prisoner or the prisoner's spouse against the suspension by prison officials of in-person visitation or telephone communications for a period of as long as eight

---

[6] Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

7

months." Malave v. Weir, 2018 WL 500644, at *7 (D. Conn. Jan. 22, 2018), aff'd, 750 F. App'x 65 (2d Cir. 2019) (summary order). The Second Circuit affirmed, holding neither the Supreme Court nor the Second Circuit had clearly established a right to spousal visitation in prison. See Malave v. Weir, 750 F. App'x at 67.

Here, plaintiff alleges the denial of the first FRP application was on March 12, 2015—suggesting a substantially longer deprivation of her alleged right to full-contact visitation with her spouse than the eight months in Malave v. Weir. Nonetheless, plaintiff's alleged right prohibiting the suspension of full-contact visitation, even for over four years, has not been clearly established. As the Second Circuit stated in its summary order in Malave v. Weir, "[c]ases in this circuit . . . have not clearly established a right to spousal visitation in prison." 750 F. App'x at 67.

Moreover, like in Malave v. Weir, plaintiff has not been permanently deprived of full-contact visitation with her husband. In Malave v. Weir, the Second Circuit found the district court had properly "particularized" the right at issue to be an eight-month deprivation of visitation rights, because the warden had reinstated full visitation rights after eight months. 750 F. App'x at 67. In doing so, the Second Circuit rejected the plaintiffs' argument that the deprivation was "permanent." Id. The plaintiffs had argued the official action was the "threat of a permanent deprivation of their visitation rights," because when the warden initially informed plaintiffs their visitation rights were terminated, she did not give them a time when the visitation rights would be reinstated. Id. at 66–67.

Here, like in Malave v. Weir, plaintiff's alleged right to visit Tolliver has not been permanently deprived. Tolliver was directed to re-apply to the FRP in December 2019, and Deputy Comm'r McKoy noted in one letter to Tolliver that Tolliver had "not been determined to

8

be ineligible for participation in FRP." (Compl. at 39). In that letter, McKoy also wrote, "It was recommended that you reapply after December 11, 2019, with improved institutional and disciplinary adjustment." (Id.). In addition, Director Smith-Roberts wrote to Tolliver, "[e]ach application and/or appeal is reviewed on its own merit" (Compl. at 76), and FRP Coordinator Dewitt advised Tolliver in another letter "to continue with positive programming and then reapply after December 11, 2019 as instructed" (id. at 24). Most telling, plaintiff states in her September 16, 2019, letter to the Court that plaintiff <u>was</u> approved to participate in the FRP at Attica Correctional Facility, but was then transferred to another facility. (Doc. #23 at 1).

Moreover, plaintiff was not fully deprived of the ability to contact her husband. In <u>Malave v. Weir</u>, the Second Circuit noted plaintiffs had been deprived of telephonic and non-contact visitation for an even shorter period of time than the eight months she was deprived of full-contact visitation. <u>Id</u>. at 67. 750 F. App'x at 67. Here, the complaint similarly indicates plaintiff and her spouse are still able to speak on the telephone and participate in non-contact, in person visitation. (<u>See</u> Compl. at 38 ("You are encouraged to continue participating in regular visiting, the telephone home and written communication.")).

Finally, the Court notes in an earlier unpublished summary order, the Second Circuit stated, "the intentional or malicious deprivation of visitation to a prisoner, even on one occasion, could rise to the level of a constitutional violation." <u>Mills v. Fischer</u>, 497 F. App'x 114, 116 (2d Cir. 2012) (summary order). Here, plaintiff's complaint may be construed as asserting an intentional or malicious deprivation of plaintiff's asserted right to visit with her husband. However, as the district court noted in <u>Malave v. Weir</u>, which the Second Circuit affirmed in a summary order, the statement in <u>Mills v. Fischer</u> was (i) dicta, (ii) equivocal, (iii) appeared in an unpublished, non-precedential summary order, and (iv) relied on cases that have nothing to do

9

with prison visitation. 2018 WL 500644, at *6. Thus, the Court finds, like the district court in Malave v. Weir, that the language in Mills v. Fischer is insufficient to constitute clearly established law for purposes of overcoming qualified immunity. Malave v. Weir, 2018 WL 500644, at *7; accord Miller v. Annucci, 2019 WL 4688539, at *14 n.5 (holding the Second Circuit's dicta in Mills v. Fischer did not create clearly established law for qualified immunity purposes).

Accordingly, defendants are entitled to qualified immunity.

III.  Leave to Amend

The Court declines to grant plaintiff leave to amend.

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a) is warranted with respect to pro se litigants, who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000). District courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). However, leave to amend may "properly be denied for . . . 'futility of amendment.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). This is true even when plaintiff is proceeding pro se. See Martin v. Dickson, 100 F. App'x 14, 16 (2d Cir. 2004) (summary order).

Here, repleading would be futile because the problems with plaintiff's claims are "substantive," such that "better pleading will not cure [them]." Cuoco v. Moritsugu, 222 F.3d at 112. As discussed above, defendants are entitled to qualified immunity on plaintiff's right to

10

intimate association claim.  See Johnson v. Dobry, 660 F. App'x 69, 71 (2d Cir. 2016) (summary order) (holding amendment would have been futile because an officer was entitled to qualified immunity as demonstrated on the face of the complaint).

Accordingly, the Court declines to grant plaintiff leave to file an amended complaint.

## CONCLUSION

The motion to dismiss is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #16) and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: January 13, 2020
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge